# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:12CR123-1 |
| | ) | |
| KRISTEN DOUGLAS WELTER | ) | |

### MEMORANDUM OPINION AND ORDER

A grand jury for this district indicted the defendant for possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). (Docket Entry 4.) The case thereafter came before the Court for a hearing on an oral motion for detention by the United States, pursuant to 18 U.S.C. § 3142(f)(1)(E). (See Docket Entry dated Apr. 4, 2012.) At the end of the hearing, the Court orally ordered the defendant's detention because clear and convincing evidence established that no available conditions of release would reasonably assure the safety of the community and because a preponderance of the evidence established that no such conditions would reasonably assure the defendant's appearance. (See id.) The Court now enters this written order memorializing that ruling as required by 18 U.S.C. § 3142(i)(1).

### BACKGROUND

In advance of the hearing, a United States Probation Officer prepared a report regarding the defendant's history, residence, family ties, employment history, financial resources, health

(including as it relates to mental health and substance abuse issues), and prior record. Both parties had an opportunity to review that report. At the hearing, the defendant conceded the accuracy of the report. Without objection by the defendant, the Court took notice of the affidavit filed in support of a criminal complaint (Docket Entry 1) issued prior to the indictment. The defendant was "afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear[ed] at the hearing, and to present information by proffer or otherwise," 18 U.S.C. § 3142(f). In this regard, the defendant opted not to present any evidence, but did cross-examine a federal law enforcement officer called by the United States (who also had submitted the affidavit in support of the criminal complaint).

## DISCUSSION

In evaluating the issue of release or detention, the Court has considered the following statutorily-prescribed factors: "(1) the nature and circumstances of the offense charged . . .; (2) the weight of the evidence against the [defendant]; (3) the history and characteristics of the [defendant] . . .; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g). Based on the record before it, the Court makes the following findings of fact and/or conclusions of law:

1) the offense charged:

A) is serious in nature, including as reflected by the available prison sentence, see, e.g., United States v. Williams, 576 F.3d 1149, 1158 (10th Cir. 2009) ("Being a felon in possession of a firearm is a serious offense."); United States v. Melquizo, 824 F.2d 370, 371 (5th Cir. 1987) ("We find that a possible sentence of ten years is also sufficient indication that the offense is serious."); United States v. Stump, 784 F. Supp. 326, 330 (N.D.W. Va. 1992) (describing Section 922(g)(1) as "a serious federal crime"); 18 U.S.C. §§ 924(a)(2) (providing for prison term of up to ten years for violation of 18 U.S.C. § 922(g)), 3142(g)(1) (identifying question of whether offense "involves a . . . firearm" as among important factors in assessment of nature of offense); and

B) involved circumstances that raise significant concerns about risk of danger, in that the evidence reflects the defendant has previously used dangerous weapons in an aggressive fashion;

2) the weight of the evidence against the defendant is overwhelming:

A) in March 2012, through the use of an undercover agent, federal law enforcement officers made contact with the defendant and observed him displaying and demonstrating his proficiency with a .22 revolver at his residence and, thereafter,

executed a search warrant for that residence, at which time they seized a .22 revolver and ammunition;

      B)    prior to the instant offense conduct and before the enactment of the sentencing scheme described in <u>United States v. Simmons</u>, 649 F.3d 237, 240-50 (4th Cir. 2011) (en banc), the defendant sustained at least one conviction under North Carolina law for an offense then punishable by more than one year in prison, i.e., attempt to injure a person with an explosive device, possession of a weapon of mass destruction, assault on a law enforcement officer with a deadly weapon, and assault with a deadly weapon with intent to kill (in 1986), for which he received a 25-year prison term (with three years suspended), as to which he served approximately nine years, <u>see generally</u> <u>United States v. Harris</u>, No. 11-4389, 2011 WL 6229795, at *1 (4th Cir. Dec. 15, 2011) (unpublished) ("[The defendant's] 1992 convictions . . . pre-date enactment of North Carolina's Structured Sentencing Act, which was at issue in <u>Simmons</u>."); and

      C)    no reasonable dispute appears to exist as to the interstate nexus of the firearm(s) in question; and

   3)    the history and characteristics of the defendant raise the following concerns regarding risk of danger and of non-appearance:

      A)    the defendant's above-referenced convictions stem from an incident in which he placed six pipe-bombs (which

detonated) around the vehicle of a state trooper at the state trooper's residence, in retaliation for what the defendant perceived as harassment as reflected by his receipt of some speeding tickets;

B) the defendant admitted to federal law enforcement officials that he would have been paroled after serving approximately seven years of his above-referenced sentence, but for the fact that he wired the driver's seat of a prison vehicle to produce an electric shock upon engagement of the ignition;

C) persons who worked with the defendant since his release from prison described him as a highly-talented master mechanic who had a volatile personality and difficulty getting along with others;

D) one individual who worked with the defendant during this period described an occasion when the defendant, upon arriving at a new work-site, announced that he would "stab" and would "cut the throat" of anyone who "back-stabbed" him;

E) the defendant traveled internationally and obtained avionics expertise while serving in the United States Marine Corps;

F) the defendant has demonstrated the ability to acquire, to modify, and to pilot sophisticated remote-controlled aircraft with wing-spans up to nine feet, pay-load capacity up to 25 pounds, velocity up to 100 m.p.h., flight ceilings up to 1,000

feet, programmability for flights miles out of line-of-sight to assigned targets, and live video feeds;

G) the defendant has given accounts of the circumstances of his involvement in such activities that others have contradicted (e.g., the defendant told federal law enforcement officials that he engaged in such activities through an organization known as the "Flying Aces" and with a high school ROTC program, but the president of the "Flying Aces" group denied that the defendant had an affiliation with said group and the head of the high school ROTC program similarly denied any involvement with the defendant);

H) a consent search of the defendant's computer revealed a Word document discussing the feasibility of manufacturing and selling for profit small, remotely-piloted aircraft and discussing options for enabling such aircraft to evade "jamming" signals, to avoid RADAR detection, and to strike larger "drone" aircraft;

I) the defendant told federal law enforcement officials that someone had solicited him over the internet to assist in remotely-piloting small aircraft into Afghanistan and, although the defendant claimed to have promptly reported that information to federal law enforcement officials, no record of such a report has been found; and

J) the defendant traveled to Lebanon through Canada in 2011 and has given materially inconsistent accounts of related circumstances (e.g., when questioned by federal law enforcement officials in April 2011, the defendant described his religious faith as Christian and denied having any contact in Lebanon with anyone associated with Hezbollah, but, when interviewed by federal law enforcement officials in March 2012, acknowledged that he had converted to Islam several years ago and that, while he visited a site in Lebanon reportedly damaged by Israeli bombing, individuals whom he believed were affiliated with Hezbollah questioned him).

Given these considerations, including particularly the serious nature of the charged offense, the defendant's history of violent and volatile behavior, and the evidence that the defendant has lied about the nature of his interest and involvement with remotely-piloted aircraft, as well as circumstances relevant to his Middle East travel, the Court concludes that clear and convincing evidence establishes that no available release conditions would reasonably assure the safety of the community and that a preponderance of the evidence establishes that no such conditions would reasonably assure the defendant's appearance. The proposal of home detention with electronic monitoring but no third-party custodian would insufficiently mitigate these risks for a number of reasons. First, the defendant has great sophistication in the manipulation of electronic and mechanical devices, such that, through tampering,

he could render unreliable any electronic-monitoring system. Second, without a suitable third-party custodian, the Court would have no regular ability to determine if the defendant was engaged within his home in preparation for dangerous activities or flight. Third, the defendant could act out in a violent manner (as he has in the past) more quickly than any response to an electronic report of non-compliance with a home detention condition could occur.

**IT IS THEREFORE ORDERED** that the oral motion for detention by the United States is **GRANTED**. Pursuant to 18 U.S.C. § 3142(e)(1), the defendant is committed to the custody of the United States Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

                                        /s/ L. Patrick Auld
                                            **L. Patrick Auld**
                                   **United States Magistrate Judge**

April 6, 2012